## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **HEYTER LANDIN-HERNANDEZ,** ) | Case No. 25-12889 |
| ) | |
| Petitioner, ) | |
| ) | **PETITION FOR WRIT OF** |
| v. ) | **HABEAS CORPUS** |
| ) | |
| **Antone Moniz**, Superintendent, Plymouth County ) | |
| Correctional Facility; ) | |
| ) | |
| **Patricia Hyde**, Acting Director, Boston Field ) | **ORAL ARGUMENT** |
| Office, U.S. Immigration and Customs ) | **REQUESTED** |
| Enforcement; ) | |
| ) | |
| **Kristi Noem**, Secretary of the U.S. Department of ) | |
| Homeland Security; and ) | |
| ) | |
| **Pamela Bondi**, Attorney General of the United ) | |
| States; ) | |
| ) | |
| in their official capacities, ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

### INTRODUCTION

1. Petitioner Heyter Landin-Hernandez ("Petitioner" or "Mr. Landin-Hernandez") came to

   the United States from Cuba in 2002, when he was nineteen years old. He is currently

   detained in the custody of the Department of Homeland Security's (DHS) Immigration

   and Customs Enforcement (ICE) ("ICE" or "government") at Plymouth County

   Correctional Facility in Plymouth, MA. Since his detention in March 2025, he has now

   been detained for more than 180 days, and his removal is not reasonably foreseeable.

1

Accordingly, to vindicate Mr. Landin-Hernandez's constitutional rights, this Court should grant the instant petition for a writ of habeas corpus.

2. Mr. Landin-Hernandez was ordered removed to Cuba *in absentia* on September 21, 2006, by the Miami Immigration Court. He was released under an Order of Supervision and had been regularly attending check-ins with ICE until he was detained on March 4, 2025. He has remained in ICE custody since that date, 214 days ago.

3. It is not reasonably foreseeable that Mr. Landin-Hernandez will be removed, neither to his native country of Cuba nor to any other country. ICE has never indicated any meaningful intention or even ability to remove Mr. Landin-Hernandez to Cuba. In addition, ICE has not communicated to Mr. Landin-Hernandez any appreciable progress toward effectuating his removal to a third country. While ICE has suggested that they may remove Mr. Landin-Hernandez to Mexico, El Salvador, Panama, Costa Rica, or another Central American country, there is no evidence that any of these countries have agreed to accept Mr. Landin-Hernandez, that travel documents have been issued, or that removal to any of these countries has been arranged.

4. Absent an order from this Court, Mr. Landin-Hernandez will remain in detention indefinitely, deprived of his liberty, with no opportunity for bond. He will be unable to support his six U.S. citizen children or his ailing, elderly lawful permanent resident mother.

5. ICE has had nearly two decades to effectuate Mr. Landin-Hernandez's removal to Cuba or to a third country. Despite having nineteen years to prepare for Mr. Landin-Hernandez's removal, and detaining Mr. Landin-Hernandez for more than six months, ICE has not, upon information and belief, come any closer to effectuating Mr.

Landin-Hernandez's removal to Cuba or a third country. Thus, Mr. Landin-Hernandez's detention violates the Immigration and Nationality Act ("INA") as well as the Substantive Due Process guarantee of the Fifth Amendment to the United States Constitution, and he respectfully petitions this Court and requests that an order be entered for his immediate release under reasonable conditions of supervision. *See Zadvydas v. Davis*, 533 U.S. 678 (2001).

## JURISDICTION

6. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*

7. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

8. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

9. Venue is proper in the U.S. District Court for the District of Massachusetts because Petitioner is detained at the Plymouth County Correctional Facility in Plymouth, Massachusetts, which is within the jurisdiction of this District, and no real property is involved in this action. 28 U.S.C. § 1391(e).

## REQUIREMENTS OF 28 U.S.C. § 2243

10. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief.

3

28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

11. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

## PARTIES

12. Petitioner Heyter Landin-Hernandez is a citizen of Cuba. He has six U.S. Citizen children, for whom he provides both emotional and financial support. He also provides emotionally and financially for his elderly mother, a legal permanent resident, who resides in a nursing home in Florida. He arrived in the U.S. in 2002 and has continuously lived in the U.S. since his arrival here, working as a truck driver to support his family. He is currently detained at the Plymouth County Correctional Facility in Plymouth, MA. He is in the custody, and under the direct control, of Respondents and their agents.

13. Respondent Antone Moniz is the Superintendent of Plymouth County Correctional Facility, which has immediate physical custody of Petitioner pursuant to the facility's contract with U.S. Immigration and Customs Enforcement to detain noncitizens. Respondent Moniz is therefore a legal custodian of Petitioner.

14. Respondent Patricia Hyde is sued in her official capacity as the Acting Director of the Boston Field Office of U.S. Immigration and Customs Enforcement. Respondent Hyde is a legal custodian of Petitioner and has authority to release him.

4

15. Respondent Kristi Noem is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for Petitioner's detention. Respondent Noem is a legal custodian of Petitioner.

16. Respondent Pamela Bondi is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. Respondent Bondi is a legal custodian of Petitioner.

## STATEMENT OF FACTS

17. Heyter Landin-Hernandez was born on September 28, 1983 in Colón, Matanzas, Cuba. When he was nineteen, he fled the Castro regime in Cuba with his mother by boat, ending up in Miami, Florida. *See* Ex. A, Decl. of Mr. Landin-Hernandez, ¶ 1. He has continuously lived in the U.S. since his arrival in 2002. Mr. Landin-Hernandez has seven children, six of whom are U.S. citizens. He has a fiancée, six children, three stepchildren, and a mother who all depend on him for emotional and financial support.

18. Mr. Landin-Hernandez was ordered removed *in absentia* on September 21, 2006 by an Immigration Judge at the Miami Immigration Court. *See* Ex. B, Order of Supervision.

19. Given the lack of diplomatic relations between Cuba and the United States in 2006, and the Cuban government's resulting unwillingness to issue travel documents, ICE was unable to remove Mr. Landin-Hernandez to Cuba and instead placed him on an Order of

Supervision. *See id*. He acquired employment authorization and checked in regularly with ICE, as required by his Order of Supervision. *See* Ex. C, DHS Personal Report Record.

20. On March 4, 2025, Mr. Landin-Hernandez was detained by ICE after presenting himself at a Canadian port-of-entry. *See* Ex. D, Notice of Custody Determination. Fearful of increasing ICE enforcement, Mr. Landin-Hernandez was attempting to seek refuge in Canada. *See* Ex. A at ¶ 7. He was initially detained at the Buffalo (Batavia) Service Processing Center in New York.

21. Shortly after his detention, Mr. Landin-Hernandez was informed that he would not be released. *Id.* at ¶ 9. At no point was Mr. Landin-Hernandez ever provided a notice revoking his Order of Supervision or an explanation as to why it had been revoked. *Id.* at ¶ 10. Mr. Landin-Hernandez, fearful and panicked, began experiencing heart palpitations and was brought to a nearby hospital. When he returned to the detention facility, he was told he would have to wait ninety days before he could be released. *Id.*

22. During his first month in ICE custody, ICE told Mr. Landin-Hernandez they would try to remove him to a third country, possibly El Salvador, Panama, Costa Rica, or another Central American country. *Id.* at ¶ 11. Mr. Landin-Hernandez has never been to those countries, has no ties to them, and is afraid to be sent to those countries. *Id*. ICE never indicated that any of those countries had issued him a travel document.

23. After about one month, ICE provided Mr. Landin-Hernandez with a Notice of Custody Review, scheduled to take place shortly before he reached ninety days in detention. *See* Ex. E,  Notice to Alien of File Custody Review. ICE then told Mr. Landin-Hernandez that this 90-day review would not matter, and he would be held until his 180-day custody review according to administration policy. *Id.* at ¶ 13. This directly contradicts the

federal regulations, which require an individualized determination whether to continue custody. *See* 8 C.F.R § 241.4(f); 8 C.F.R. § 241.13.

24. ICE then transferred Mr. Landin-Hernandez to the Federal Correctional Institution in Berlin, NH. Mr. Landin-Hernandez was held in this facility for about two months. During this time, he received no information from ICE about their efforts to remove him to another country. *Id.* at ¶ 14.

25. On June 3, 2025, after 90 days in detention, Mr. Landin-Hernandez received a custody review. He submitted letters of support from family members and his former employer beforehand. Several days after the interview, he was told he would not be released because of his previous criminal convictions. *Id.* at ¶ 15. ICE did not mention any prospects of removal.

26. In early June 2025, shortly after his custody review, Mr. Landin-Hernandez was transferred to the Plymouth County Correctional Facility in Plymouth, MA, where he is currently detained. After arriving in Plymouth, ICE informed Mr. Landin-Hernandez that they may try to remove him to a country in Central America, possibly El Salvador or Honduras. *Id.* at ¶ 16. Mr. Landin-Hernandez has never been to those countries, has no connections to them, and is afraid to go there. *Id.* The ICE officer acknowledged that it was unlikely those countries would issue him a travel document. *Id.*

27. A few days later, on July 3, 2025, ICE officials gave Mr. Landin-Hernandez a Notice of Removal to Mexico, and requested he sign the form. *See* Ex. F, Notice of Removal. Mr. Landin-Hernandez refused to sign the form and instead informed ICE that he was afraid to go to Mexico. *See id.*; Ex. A at ¶ 17. Since then, ICE has not given Mr. Landin-Hernandez any additional information about their efforts to remove him to

Mexico or to any other country. ICE's failure to provide him with a reasonable fear interview is inconsistent with the Guidance Regarding Third Country Removals, issued in an internal DHS memorandum on March 30, 2025, which requires Immigration officers to refer the noncitizen to USCIS for a screening interview within 24 hours of the noncitizen affirmatively expressing fear of removal to the third country. *See* Memorandum, U.S. Dep't of Homeland Security, Guidance Regarding Third Country Removals (Mar. 30, 2025).

28. Mr. Landin-Hernandez received a Notice to Alien of Interview for Review of Custody Status on August 11, 2025, when he had been in custody for 160 days. *See* Ex. G. At this interview, ICE informed him that they had not secured a travel document to remove him. *See* Ex. A at ¶ 18. As of the time of this filing, ICE, in violation of the regulatory requirement to provide "a copy of any decision . . . to retain custody [that] briefly set[s] forth the reasons for the continued detention," has not informed him of their decision from this custody review or provided any further information about ICE's intent to remove him to a third country. 8 C.F.R. § 241.4(d).

29. Mr. Landin-Hernandez has now been in custody for 214 days, well past the 180 days of custody authorized by statute, and nineteen years after he was issued a Final Order of Removal. See *Zadvydas*, 533 U.S. at 699, 701.

30. Mr. Landin-Hernandez has a U.S. citizen fiancée, six U.S. citizen children, and a permanent resident mother, all of whom live in Florida. If released, Mr. Landin-Hernandez would return to Florida and live with his fiancée in Miami. Mr. Landin-Hernandez wants nothing more than to return home, where he can see his children and care for his elderly mother, who suffers from end-stage renal disease and

congestive heart failure and requires round-the-clock care. Prior to his detention, Mr. Landin-Hernandez worked full time as a commercial truck driver and was the primary financial provider for his mother and children. He wants to be able to return to work so he can continue providing for them. His mother has moved to a nursing home, which the family struggles to afford, because Mr. Landin-Hernandez is not available to help care for her. His ex-wife has had to drastically increase her work schedule because Mr. Landin-Hernandez can no longer provide child support payments, which he had paid diligently for years. *See* Ex. H, Documentation of Child Support Payments. His continued detention has caused significant financial and emotional hardship to his family.

31. Prior to his detention, Mr. Landin-Hernandez complied with his Order of Supervision and regularly checked in with ICE for nearly two decades. *See* Ex. C. He had a valid Employment Authorization Document. Although Mr. Landin-Hernandez has been convicted of crimes in the past, he was open about his convictions when interacting with immigration officials, and ICE authorized his continued release on an Order of Supervision for over a decade after his final criminal conviction in 2012. Since he completed his sentence in 2013, Mr. Landin-Hernandez has been a law-abiding, hardworking member of his community and provider for his six children and his ailing mother. If released, Mr. Landin-Hernandez will return to his job, family, and community.

## LEGAL ARGUMENT

32. Where a noncitizen has been in post-removal confinement for over 180 days and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either "respond with evidence

sufficient to rebut that showing" or release them from detention under supervision.

*Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

33. As the length of time in detention grows, however, the period of time that would be

considered the "reasonably foreseeable future" conversely shrinks. *Id.* at 701.

34. Mr. Landin-Hernandez is currently detained under DHS's 8 U.S.C. § 1231(a)(6) authority

for a period surpassing 180 days. His detention is thus under the direct purview of

*Zadvydas*.

35. The government's inability to deport Mr. Landin-Hernandez since they first took him into

custody—and having had the opportunity to effectuate his removal since 2006—provides

strong evidence that there does not exist a significant likelihood that they will remove Mr.

Landin-Hernandez in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at

701-02 ("if removal is not reasonably foreseeable, the court should hold continued

detention unreasonable and no longer authorized by statute"); *see also Kong v. United*

*States*, 62 F.4th 608, 620, n.12 (1st Cir. 2023) ("the connection between executing a

removal order and detaining a noncitizen unravels if the noncitizen is not removed within

that ninety-day window, especially when, as in this case, the noncitizen has been released

with supervision.").

36. Mr. Landin-Hernandez has cooperated with ICE in their efforts to remove him. As

described in the above facts, ICE has mentioned several countries but failed to identify a

third country that may be willing to accept him and never secured travel documents to

any country. *See Siguenza v. Moniz*, No. 25-CV-11914-ADB, 2025 WL 2734704, at *3

(D. Mass. Sept. 25, 2025) ("Petitioner cannot be removed to Ecuador, and Respondents,

in the more than six months since Petitioner's re-detention, have not been able to even

identify a third country that might be willing to accept him, let alone secure travel documents for Petitioner."). When ICE did identify a possible third country and notified Mr. Landin-Hernandez, they failed to follow through with their removal efforts and failed to schedule a reasonable fear interview after Mr. Landin-Hernandez expressed his fear of removal there, contrary to their own internal policy. *See* Ex. F; Ex. A at ¶ 17; *see also* Memorandum, U.S. Dep't of Homeland Security, Guidance Regarding Third Country Removals (Mar. 30, 2025). Instead, they abandoned their efforts to remove Mr. Landin-Hernandez to Mexico and failed to identify an alternative country of removal. Therefore, Mr. Landin-Hernandez has provided "good reason" to believe that his removal is not significantly likely in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701; *see also Siguenza,* 2025 WL 2734704, at *3.

37. Accordingly, because Respondents have not supplied sufficient evidence to the contrary, they should immediately release Mr. Landin-Hernandez from their custody because his "continued detention [has become] unreasonable and [is] no longer authorized by statute." *Zadvydas*, 533 U.S. at 699-700. Courts have recognized the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty." *Id*. at 692. In facilitating Mr. Landin-Hernandez's release, Respondents may implement appropriate supervision requirements that comply with his substantive and procedural rights.

38. Additionally, the government interest in "preventing flight [] is weak or nonexistent where removal seems a remote possibility at best." *Id.* at 690. Any speculative public safety rationale that Respondents may proffer would be attenuated and outweighed by Mr. Landin-Hernandez's strong liberty interest.

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of 8 U.S.C. § 1231 and Implementing Regulations

39. The allegations in the above paragraphs are realleged and incorporated herein.

40. Mr. Landin-Hernandez's detention violates 8 U.S.C. § 1231(a) of the Immigration and
    Nationality Act (INA).

41. Mr. Landin-Hernandez has a final order of removal to Cuba, his country of origin.
    However, ICE has not indicated, and no evidence suggests, that Cuba, or any other
    country, has accepted Mr. Landin-Hernandez for removal.

42. Although ICE has suggested several possible countries of removal, Mr.
    Landin-Hernandez's continued detention for over six months indicates that the suggested
    countries have not accepted Mr. Landin-Hernandez for removal.

43. The only statutorily permissible basis to continue detaining Mr. Landin-Hernandez
    "beyond the removal period" (defined as a period of 90 days) is to effectuate removal. 8
    U.S.C. § 1231(a)(6); s*ee also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) ("[O]nce
    removal is no longer reasonably foreseeable, continued detention is no longer authorized
    by statute."). Because Mr. Landin-Hernandez's removal is not reasonably foreseeable and
    he has been held well beyond the removal period, his detention does not effectuate the
    purpose of the statute and is accordingly not authorized by § 1231(a).

44. For these reasons, Mr. Landin-Hernandez's detention violates 8 U.S.C. § 1231 and its
    implementing regulations, 8 C.F.R. §§ 241.1-241.19.


### COUNT TWO
### Violation of Fifth Amendment Right to Due Process

45. The allegations in the above paragraphs are realleged and incorporated herein.

46. ICE is depriving Mr. Landin-Hernandez of his liberty in violation of the Substantive Due Process Clause of the Fifth Amendment to the United States Constitution.

47. Indefinite civil detention requires a "special justification" that is strong enough to "outweigh[] the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas*, 553 U.S. at 690 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

48. Here, there is no special justification because ICE has not indicated, and no evidence suggests, that any country has accepted Mr. Landin-Hernandez for removal. Therefore, given that over six months have passed since Mr. Landin-Hernandez was first deprived of his liberty, his removal is not reasonably foreseeable.

49. "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699-700. The court should then order the person's release and condition it upon "various forms of supervised release that are appropriate in the circumstances[.]" *Id*. at 700.

50. For these reasons, Mr. Landin-Hernandez's detention violates the Due Process Clause of the Fifth Amendment.

### <u>PRAYER FOR RELIEF</u>

Wherefore, Mr. Landin-Hernandez respectfully requests this Court to grant the following:

(1)    Assume jurisdiction over this matter;

(2)    Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

(3)   Declare that Mr. Landin-Hernandez's detention violates 8 U.S.C. § 1231 and the Due

      Process Clause of the Fifth Amendment;

(4)   Issue a Writ of Habeas Corpus ordering Respondents to release Mr. Landin-Hernandez

      immediately;

(5)   Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and

      on any other basis justified under law; and

(6)   Grant any further relief this Court deems just and proper.

Respectfully submitted,


Sarah Sherman-Stokes
*Counsel for Petitioner*
BBO #: 682322
Supervising Attorney
Boston University School of Law
Immigrants' Rights and Human Trafficking Program
197 Friend Street, 2nd Floor
Boston, MA 02114


Kristen Cain
Student Attorney
Boston University School of Law
Immigrants' Rights and Human Trafficking Program
197 Friend Street, 2nd  Floor
Boston, MA 02114


Jacob Hevenor
Student Attorney
Boston University School of Law
Immigrants' Rights and Human Trafficking Program
197 Friend Street, 2nd  Floor
Boston, MA 02114

14

Dated: 10/03/2025

## <u>VERIFICATION PURSUANT TO 28 U.S.C. § 2242</u>

I represent Petitioner, Heyter Landin-Hernandez, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 3rd day of October, 2025.

_____
Sarah Sherman-Stokes
*Counsel for Petitioner*
BBO #: 682322
Supervising Attorney
Boston University School of Law
Immigrants' Rights and Human Trafficking Program
197 Friend Street, 2nd Floor
Boston, MA 02114

16

## INDEX OF EXHIBITS

| TAB | EXHIBIT |
|---|---|
| A | Declaration of Heyter Landin-Hernandez, dated October 1, 2025, detailing his immigration history and ICE's efforts to remove him |
| B | Order of Supervision for Mr. Landin-Hernandez, dated May 19, 2011 |
| C | DHS Personal Report Record for Mr. Landin-Hernandez, listing the dates and times Mr. Landin-Hernandez reported to ICE between September 14, 2011 to November 15, 2024 |
| D | Notice of Custody Determination, dated March 4, 2025, notifying Mr. Landin-Hernandez of ICE's decision to detain him |
| E | Notice to Alien of File Custody Review, dated April 1, 2025, notifying Mr. Landin-Hernandez of his scheduled custody review for June 3, 2025. |
| F | Notice of Removal, dated July 2, 2025, stating that ICE intends to remove Mr. Landin-Hernandez to Mexico |
| G | Notice to Alien of Interview for Review of Custody Status, scheduling Mr. Landin-Hernandez's custody review interview for August 13, 2025 |
| H | Documentation of Child Support Payments, documenting payments Mr. Landin-Hernandez made between May 1, 2023 to April 1, 2025 |